UNITED STATES of America, Appellee,

v.

Marcel BOURQUE, Defendant-Appellant.

No. 75–1454.

United States Court of Appeals,
First Circuit.

Submitted April 6, 1976.

Decided Aug. 20, 1976.

Harold C. Arcaro, Jr., Lester H. Salter, and Salter, McGowan, Arcaro & Swartz, Providence, R. I., for defendant-appellant.

Scott P. Crampton, Asst. Atty. Gen., Washington, D.C., Lincoln C. Almond, U. S. Atty., Providence, R. I., Gilbert E. Andrews, Robert E. Lindsay, and William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D.C., on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Marcel Bourque appeals from his conviction on two counts of a three count indictment charging violations of the federal internal revenue laws. In Counts I and II, on which he was convicted by jury verdict, Bourque was charged, as the responsible officer, with wilful failure to file corporate income tax returns for Cumar Co., Inc. (Cumar), for the calendar years 1968 (Count I) and 1969 (Count II) in violation of 26 U.S.C. § 7203. On Count III, he was acquitted, by the jury, of filing a corporate return for Cumar for the year 1970 which he knew not to be true and correct in every material respect in violation of 26 U.S.C. § 7206(1).

Bourque and his wife formed Cumar in August, 1968, to carry on his business of trading in scrap metal. The evidence presented at trial tended to show that the financial accounts of the corporation were in disarray. The only records of Cumar's transactions were check books, with partially filled-in stubs, and a so-called "dome book" of receipts and expenditures maintained for some months in 1968 and 1969.

The first corporate income tax return for Cumar obtained by the IRS was a calendar year 1970 return filed in 1971.

The IRS began an audit of Cumar in 1971, and, in early 1972, the case was referred to Special Agent Katz of the Intelligence Division for investigation of possible criminal violations of the internal revenue laws. In November, 1973, Katz completed his investigation, and forwarded the case to his superior, Jerome Hart, then District Director of Intelligence in Rhode Island, with a recommendation for prosecution. Hart agreed, and sent the case on for review by the Regional Counsel of the Internal Revenue Service in Boston. After further study by the Tax Division of the Department of Justice, the case was presented to the grand jury in the District of Rhode Island and the instant indictment issued.

Bourque's first claim of error is that the district court should have granted his motion to dismiss the indictment based on Hart's participation in the decision to prosecute. In this motion, Bourque alleged that, beginning in October, 1972, he and District Director Hart had been embroiled in a personal dispute which culminated in Hart bringing suit on April 3, 1973, against one of Bourque's wholly owned corporations. Bourque further alleged that Hart had threatened him with adverse rulings in the administrative phase of the ongoing criminal tax investigation. The district court found Hart's conduct, assuming the facts contained in the affidavit were true, to be improper and distasteful, but declined to dismiss the indictment or order an evidentiary hearing on the motion.

On appeal, appellant contends that his allegations constituted a defense of discriminatory prosecution, and, at the least, he was entitled to an evidentiary hearing on his charges. *See Two Guys v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *United States v. Oaks,* 508 F.2d 1403, 1404 (9th Cir. 1974). In order to prevail on a motion to dismiss an indictment on the basis of discriminatory prosecution, a defendant must show that the government

has normally not prosecuted others for the crimes with which he is charged, and that the decision to prosecute in his case was made on invidious or impermissible grounds. *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974); *United States v. Oaks, supra; United States v. Falk,* 479 F.2d 616 (7th Cir. 1973). While recent cases have dealt with prosecutions instituted in retaliation for defendants' exercise of constitutional rights, *see, e. g., United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972), personal vindictiveness on the part of a prosecutor or the responsible member of the administrative agency recommending prosecution would also sustain a charge of discrimination. *See, generally, Moss v. Hornig,* 314 F.2d 89 (2d Cir. 1963). In this case, however, the defendant failed to allege, or make a substantial showing, that prosecutions are normally not instituted for the offenses with which he was charged. While information concerning the rate of prosecution against known offenders of the tax laws is peculiarly within the knowledge of the IRS, *see United States v. Berrios, supra,* the charges against Bourque, taken as a whole, *cf. United States v. Berrigan,* 482 F.2d 171, 177 (3d Cir. 1973), were serious ones for which prosecution, although not automatic, is a common result. *See Donaldson v. United States,* 400 U.S. 517, 535 n. 17, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Internal Revenue Service Manual § P–9–2. We conclude that appellant did not make a sufficient showing to entitle him to an evidentiary hearing or dismissal on the grounds of discriminatory prosecution.

■ Nor do we find this case an appropriate one to exercise our supervisory power. Whatever Hart's misdeeds, there is no suggestion that they impugned the fairness of Bourque's trial. Appellant asks us to reverse his conviction to ensure that the "appearance of justice", if not the reality, is not compromised. If the allegations against Hart had been made against the prosecutor or one intimately bound up in the trial process, we might consider this suggestion more seriously. As it is, we are asked to reach back, not only behind the grand jury action, but to a time prior to the final decision of the Department of Justice and the penultimate decision of the Regional Counsel to find misconduct. Should there be such, the Service itself should be the source of correction, not the courts.

■ The second issue on appeal concerns the substantive law under which Bourque was convicted on Count I of the indictment. Bourque was indicted for failure to file a calendar year return required to be filed on or before March 15, 1969. The gravamen of a violation of 26 U.S.C. § 7203 is a knowing act of omission: wilful failure to comply with a duty imposed by the internal revenue laws. *See Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). The code imposes a duty to file a return by or on certain dates, *see* 26 U.S.C. § 6072. Consequently, the date that the duty to file arises is an essential element of the § 7203 offense, *see United States v. Goldstein,* 502 F.2d 526 (3d Cir. 1974); *United States v. Pandilidis,* 524 F.2d 644 (6th Cir. 1975), and the government had the burden to prove that Bourque was obligated to file a corporate income tax return on the charged date. Bourque claims as error the denial of his motion for a directed verdict predicated on the failure of the government to so prove, and the instructions to the jury concerning the standards of proof on this issue.

The appellant's challenge rests on the peculiarities of the filing requirements for the first year of a newly formed corporation. Under 26 U.S.C. § 6072(b), returns of corporations shall be filed on or before March 15 of the year following the close of the calendar year, or, for a corporation reporting on the basis of a fiscal year, on or before the 15th day of the third month following the close of the fiscal year. Bourque formed Cumar in August, 1968. As a new corporation, it had the option of adopting a fiscal year—one ending the last day of a month other than December—as its taxable year. 26 C.F.R. § 1.441(b)(iii)(3). Therefore, Bourque contends that there was

no legal obligation to file a corporate return for Cumar on March 15, 1969, as he then retained the option to file a return on or before October 15, 1969, on the basis of a fiscal taxable year.[1]

The government states, in response to Bourque's contentions, that all the events of 1969 should be studied to determine whether there was a duty to file on March 15, 1969. It suggests that the failure to adopt a fiscal year and file a return by October 15, 1969, made the duty to file by March 15, 1969, absolute. Thus, it was permissible to prosecute Bourque for failure to file a return by March 15 even though he could have filed a return any time up to October 15 on a fiscal year basis. The district court adopted the government's view, and decided the motion for a directed verdict of acquittal and instructed the jury accordingly.

█ We are forced to disagree. If this were a civil proceeding concerned with assessing interest or penalties for failure to pay taxes due, we might find this argument persuasive. We are dealing here, however, with a criminal prosecution under a statute which makes an act of omission a misdemeanor. Just as subsequent conduct cannot relieve a taxpayer from criminal liability for failure to file tax returns on or before their due date, *United States v. Ming,* 466 F.2d 1000, 1005 (7th Cir. 1972); *United States v. McCormick,* 67 F.2d 867, 868 (2d Cir. 1933), we do not think that subsequent events can transform an act of omission, innocent when it occurred, into a criminal act.[2]

█ Therefore, we agree with the appellant that the government was obliged to prove that the internal revenue laws imposed a duty on him to file a calendar year return for Cumar on or before March 15, 1969, as of that date. But, contrary to appellant's assertions, we are not convinced that the government could not have fulfilled this burden. The privilege to file a return on a fiscal year basis is not absolute: the statute requires record keeping and the adoption of a proper accounting period as predicates to filing tax returns on other than a calendar year basis. 26 U.S.C. § 441(g); *see* 26 C.F.R. § 1.441–1(g).[3] The

---

1. Cumar was formed in August, 1968; it could adopt as an accounting period for its first year, any period ending on the last day of any month up to and including July, 1969. The last possible filing date of a fiscal year return was, therefore, October 15, 1969. It is to be noted that the government could have obviated the problem addressed herein by charging that Bourque failed to file a return for a calendar year or fiscal year on or before October 15, 1969.

 Bourque's defense goes only to Count I—failure to file a return on or before March 15, 1969. IRS regulations provide that a new taxpayer must adopt a taxable year on or before the time prescribed by law for the filing of the return for the taxable year. Bourque did not adopt a fiscal year by October 15, 1969. As of that date, at least he was required to file returns on a calendar year basis. 26 C.F.R. § 1.441–1(d). Cumar could not change from a calendar year to a fiscal year after that date except by permission of the IRS Commissioner. 26 C.F.R. §§ 1.441–1(b)(iii)(4); 1.442–1. Therefore, Cumar was under a legal obligation to file as a calendar year taxpayer for 1969 and succeeding years. There is no question of the legal obligation to file a calendar year return on March 15, 1970, as charged in Count II. We are not persuaded by appellant's arguments that the distinction between calendar years and fiscal years was so confusing that the jury must have

been incapable of rendering a valid verdict on Count II. Nor do we think the instructions impermissibly shifted the burden of proof on this issue.

2. The case was tried and submitted to the jury on the theory that Bourque failed to file a required return on or before March 15, 1969. The government did not attempt to amend the indictment to charge a failure to file on or before October 15, 1969, nor was that theory submitted to the jury. Thus we face a different question than those addressed in *United States v. Pandilidis, supra* and *United States v. Goldstein, supra,* where the government did make such an effort. Nor are we dealing with the question of variance of proof from the indictment which was allowed in *United States v. Doelker,* 327 F.2d 343 (6th Cir. 1964); *United States v. Foster,* 197 F.Supp. 387 (D.Md.1961).

3. Section 441(g) reads:

 "*No books kept; no accounting period.*—Except as provided in section 443 (relating to returns for periods of less than 12 months), the taxpayer's taxable year shall be the calendar year if—

 (1) the taxpayer keeps no books;

 (2) the taxpayer does not have an annual accounting period; or

adoption of an annual accounting period, under the regulations, can be effected at anytime up to the filing date of a tax return based on that fiscal year. *See* 26 C.F.R. § 1.441(a)(iii)(3). Consequently, failure to select an annual accounting period prior to March 15, 1969, cannot give rise to an inference that such an accounting period could not later be validly adopted. Only the record keeping requirement affords the government the opportunity to make the requisite showing.[4] The burden was to show that Cumar's record keeping was so poor, in the period between August, 1968, and March 15, 1969, that, as of that later date, the corporation could not possibly have offered the IRS books which "accurately and clearly" reflected its income for a fiscal year subsequently chosen. This, in our opinion, would constitute proof that Bourque had a duty to file a return on the March 15 date charged in the indictment and relied upon at trial.

 When the defendant has moved for a directed verdict of acquittal at the proper time, the issue on appeal is whether the evidence, viewed in the light most favorable to the government, is sufficient to support a verdict of guilty. *Parker v. United States,* 378 F.2d 641 (1st Cir. 1967); *Small v. United States,* 255 F.2d 604 (1st Cir. 1958). At trial, the bulk of the evidence presented tended to show that Cumar had no system of regular record keeping which would clearly reflect income. There was, however, some contrary evidence: the "dome book" presented included some entries of receipts and expenditures for some months in 1968 and early 1969. But, granting the government all the inferences which could be legitimately drawn from the evidence, we find that a jury, under proper

instructions, could have found that Bourque had a duty to file a calendar year return as of the date charged. Accordingly, the district court did not err in denying defendant's motion for a directed verdict of acquittal.

The district court's instructions to the jury on Count I of the indictment, however, were deficient under the legal standard outlined above. As noted, the district court adopted the government's theory that the entire year, 1969, could be studied to determine whether Bourque had a duty to file on March 15, 1969. In its instructions, given over defense objection, the court charged the jury to decide whether Bourque was obligated to file a return for Cumar on a fiscal or calendar year basis on an examination of the corporation's books and accounting period for the entire 1968–1969 period. No instruction was given to study the situation of Cumar and Bourque as of March 15, 1969, in relation to those criteria. Accordingly, the jury was permitted to find that Bourque had violated § 7203 as of March 15, 1969, because he subsequently failed to adopt an accounting period or maintain books of account.

 We, therefore, reverse Bourque's conviction on Count I of the indictment. We do so reluctantly because the evidence presented at trial indicates that Bourque failed to file either a fiscal year return or a calendar year return covering the latter months of 1968. However, this is not merely a case of variance of proof from the charge in the indictment. The government chose to charge Bourque with failure to file a calendar year return; it decided to pursue that charge, and not seek amendment, when these legal problems arose. And, unlike the other reported cases involving vari-

---

(3) the taxpayer has an annual accounting period, but such period does not qualify as a fiscal year."

Section 443 provides that a return for a period of less than 12 months shall be made for a taxpayer not in existence for an entire taxable year. 26 U.S.C. § 443(a)(2). We do not construe the exception in § 441(g) to permit newly chartered corporations to adopt fiscal years despite the absence of books or a proper accounting period.

4. Theoretically, but not on the evidence presented at trial, the government could have sustained its burden by proving that the corporation had affirmatively adopted the calendar year as its annual accounting period before March 15, 1969. *See* 26 C.F.R. §§ 1.441–1(b)(i) & (iii), 1.443–1(a)(2). In the present case, there was no suggestion that Cumar had adopted such an accounting period.

ations in dates that returns were due, *see United States v. Pandilidis, supra; United States v. Goldstein, supra; United States v. Doelker,* 327 F.2d 343 (6th Cir. 1964); *United States v. Foster,* 197 F.Supp. 387 (D.Md. 1961), the question presented here is whether Bourque was legally obligated to file the charged return at all, and not merely whether he failed to file a clearly appropriate return on a specified date. As the question of Bourque's obligation was not properly presented to the jury a new trial is necessary to establish guilt under Count I.

■■■■■ The appellant's remaining claims of error are less weighty. We see no error in the refusal to instruct the jury on the difference between civil and criminal tax proceedings. *United States v. Merrick,* 464 F.2d 1087, 1093 (10th Cir. 1972). Similarly, whether or not the IRS ever loses tax returns is not an appropriate subject for judicial notice, *see* F.R.Evid. 201(b). The district court did not err in denying these requests.

Finally, appellant contends that his conviction should be set aside and a new trial granted for failure of the trial judge to grant a defense motion for recusal. This request was based upon the judge's pre-trial study of the defendant's presentence report in connection with an aborted conditional guilty plea. After review of the presentence report, the district court refused to accept the defendant's plea because it found the proposed disposition unacceptable.

The appellant does not contend that the district judge's actions violated F.R.Crim.P. 32 so that he should have automatically recused himself from further participation in the case. Rather, he contends that the possibilities of prejudice were so manifest, *see Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), that the district court should have granted the motion to preserve the appearance of impartial justice.

■■■■■ In the absence of a violation of Rule 32, the decision to grant or deny a recusal motion is one committed to the discretion of the trial judge. *United States v.*

*Gallington,* 488 F.2d 637 (8th Cir. 1973); *see United States v. Small,* 472 F.2d 818 (3d Cir. 1972). And, unless demonstrable prejudice is shown, the district court's judgment may only be set aside for an abuse of discretion. In this case, where the jury, and not the judge, was the fact-finder, and the trial occurred in a two-judge district court, we can see no such abuse. *See O'Shea v. United States,* 491 F.2d 774 (1st Cir. 1974).

*Judgment as to Count I reversed and remanded for a new trial; judgment as to Count II affirmed.*