**UNITED STATES of America, Appellee,**

v.

**Thomas J. BASSFORD,
Defendant, Appellant.**

No. 85–1739.

United States Court of Appeals,
First Circuit.

Argued Sept. 8, 1986.

Decided Jan. 14, 1987.

As amended Jan. 22, 1987.

Certiorari Denied April 20, 1987.
See 107 S.Ct. 1909.

---

David M. Sanders, with whom Rowe and Sanders, Livermore Falls, Me., was on brief, for defendant, appellant.

Timothy C. Woodcock, Asst. U.S. Atty., Bangor, Me., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief, for appellee.

Before TORRUELLA, Circuit Judge, WISDOM * and ALDRICH, Senior Circuit Judges.

WISDOM, Senior Circuit Judge:

Upon receiving a "tip" that Thomas Bassford, the defendant, was cultivating

* Of the Fifth Circuit, sitting by designation.

marijuana near his rural home, the Maine State Police conducted an aerial survey of his property. At an altitude of 1,000 feet, Officers William Draper and Michael Sperry observed Bassford's marijuana plots, and later obtained a search warrant based on their aerial observation. Marijuana plants are "distinctively brighter green than the surrounding area."[1] The officers executed the search warrant the next day, at which time they seized 227 marijuana plants on Bassford's property. The state prosecutor initiated criminal proceedings against Bassford, but later referred the case to the United States Attorney's office. A federal grand jury indicted Bassford, and he was subsequently convicted of possession and intent to distribute marijuana. The district court denied his motions for suppression of the evidence from the aerial search on fourth amendment grounds and dismissal of the indictment on the ground of selective prosecution. We affirm.

## I.

■ Bassford contends that the focussed and intentional aerial surveillance of his home and adjacent property was an unreasonable search violative of his fourth amendment right to privacy. To protect his privacy or, perhaps, to conceal his cultivation of marijuana plants, the defendant built his home on a thirty-acre tract on the side of Mount Abram. The home is a half mile from the nearest public road, a gravel road, and is a quarter of a mile from the end of a road which can be traversed only by a four-wheel drive vehicle. The only border accessible from the road is marked by a stone wall topped with two strands of barbed wire. "No Trespassing" and "Keep Out" signs are posted every fifty feet. Bassford testified that planes "don't fly over my house, because I'm up on the side of the mountain"; if they do, "they're way up going somewhere". There were three

marijuana "gardens": one 20 feet from the house, one 100 feet away, and one anywhere from 350 to 450 feet away.

Unfortunately for the defendant, the Supreme Court decided *California v. Ciraolo*,[2] after briefs were filed in this appeal. In *Ciraolo*, the Court held that the police had not violated the fourth amendment by flying over and photographing the defendant's urban backyard. The plane flew at a height of 1000 feet to confirm an anonymous tip that the defendant was growing marijuana. The property was surrounded by high fences, preventing ground level observation. The Court assumed that Ciraolo had a subjective expectation of privacy. The Court also assumed that Ciraolo's backyard was within the curtilage of his home, "where privacy expectations are most heightened".

Applying Justice Harlan's frequently cited two-prong analysis in his concurrence in the landmark case of *Katz v. United States*,[3] the *Ciraolo* Court agreed with the defendant that he had manifested a subjective expectation of privacy from ground level observations, but left undecided whether the same could be said with respect to aerial observations.[4] The Supreme Court's decision, therefore, is based on the defendant's failure to meet the second requirement of the *Katz* analysis—a *reasonable* expectation of privacy:

> The observations ... took place within public navigable airspace ... in a physically nonintrusive manner; from this point they were able to observe plants readily discernable to the naked eye as marijuana.... Any member of the public flying in this airspace who glanced down could have seen everything that these officers observed. On this record, we readily conclude that respondent's expectation that his garden was protected from such observation is unreasonable

---

1. *United States v. Bassford*, 601 F.Supp. 1324, 1326 (D.Me.1985).

2. 476 U.S. ——, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). The Court divided five to four. Justice Powell wrote a strong dissent. The decision has been criticized. 100 Harv.L.Rev. 135 (1986).

3. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

4. *Ciraola*, —— U.S. at ——, 106 S.Ct. at 1812, 90 L.Ed.2d at 216.

and is not an expectation that society is prepared to honor.[5]

The *Ciraolo* decision may narrow the protection of the fourth amendment, and it may over-expand the plain view doctrine, but it governs this Court. Bassford is in a weaker position than Ciraola. Two of Bassford's marijuana plots were not in the curtilage of his home and one was from 350 to 450 feet away in an open field. And what Bassford refers to as protective measures to preserve a reasonable expectation of privacy might also be referred to as reasonable precautions to avoid his detection as a marijuana grower. Even assuming that appellant has manifested an expectation of privacy, this expectation is unreasonable under *Ciraolo*. The dispositive consideration is not the probability that a person would see his illegal activities, but rather that "any member of the public [flying at 1000 feet or lower] ... *could* have seen everything that these officers observed." [6]

## II.

A. At trial, the defendant moved for a dismissal on grounds of selective prosecution and, in the alternative, for an evidentiary hearing on the issue. The district judge allowed a limited evidentiary hearing and later denied the motion for dismissal.

■ Prosecutors have broad discretion in deciding whom to prosecute.[7] Moreover, the courts should presume that the prosecution was pursued in good faith execution of the law.[8] The prosecutor's discretion is limited by constitutional principles of equal protection and due process, which protect individuals from selective enforcement and prosecution.[9] To overcome the presumption of good faith, a defendant must establish that his prosecution results from "intentional and purposeful discrimination".[10]

■ The test for intentional and purposeful discrimination has been set out as follows:

To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.[11]

To obtain an evidentiary hearing, the defendant has a lesser burden and need allege only "some facts (a) tending to show that he has been selectively prosecuted and (b) raising a reasonable doubt about the propriety of the prosecution's purpose." [12] If the prosecutor presents "countervailing reasons" to justify the prosecution, the district court may refuse to grant an evidentiary hearing.[13]

---

5. *Id.* at ——, 106 S.Ct. at 1813, 90 L.Ed.2d at 217. (footnote omitted).

6. *Id.* (emphasis added).

7. *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Goodwin,* 457 U.S. 368, 380 n. 11, 102 S.Ct. 2485, 2492 n. 11, 73 L.Ed.2d 74 (1982).

8. *Tracey v. United States,* 739 F.2d 679, 682 (1st Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985); *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981).

9. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886); *see also Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962).

10. *E.g., United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974).

11. *Id.* The First Circuit has adopted this test for selective prosecution claims. *See Tracey v. United States,* 739 F.2d 679, 682–83 (1st Cir. 1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985); *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981); *United States v. Union Nacional de Trabajadores,* 576 F.2d 388, 395 (1st Cir.1978).

12. *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981).

13. *Id.*

The district court held that the defendant failed to allege sufficient facts to justify a further evidentiary hearing on his claim of selective prosecution. We agree with this holding, but under a different approach from that used below.

The first part of the analysis requires some showing that the defendant was prosecuted while others similarly situated were not. There is nothing in the record to suggest that the initial state prosecution was unique or that other persons arrested for growing marijuana were not prosecuted. Appellant asserts selective prosecution by the federal government because, "with the exception of one other case, he and his former co-defendants were the only persons prosecuted for marijuana cultivation by the United States Attorney's office."

■ The district court held a limited hearing [14] at which the United States Attorney, Richard Cohen, testified that violations of concurrent federal and state drug laws were prosecuted at the federal level only if referred to his office by the state prosecutor. The United States Attorney accepted all cases referred to his office for prosecution under federal law, if he considered that a prima facie violation had been shown. Based on this testimony, the district judge properly concluded that the "defendant ... failed to allege facts suggesting that the federal prosecutor ha[d] declined to proceed against others similarly situated".

■ B. Additionally, Bassford alleges that his case was "selectively referred" for federal prosecution. The district court held that without a showing of complicity between the federal and state prosecutors, any improper selection attributable to the state prosecutor's referral could not be imputed to the federal prosecution.[15]

The defendant asserts that *United States v. Ng*,[16] supports the proposition that the acts of one sovereign may be attributed to a second sovereign that has "acted as a tool" of the first.[17] The defendant contends that by passively accepting referrals from the state prosecutor, the federal prosecutor was a "tool" of the state prosecutor; therefore, a selective prosecution resulted from the improper referral.

Bassford's reliance on *Ng* for this proposition is misplaced. There, a criminal defendant claimed that a federal prosecution seeking stiffer penalties, initiated after a plea bargain with a state prosecutor for a lesser included offense of the equivalent state law, constituted vindictive prosecution. Vindictive prosecution occurs when the actions of the judge or prosecutor somehow punish a defendant for exercising constitutional or statutory rights during the prosecution.[18] The Court of Appeals for the Second Circuit has held that "the conduct of two independent sovereigns does not lend itself to the concept of vindictive prosecution."[19] The *Ng* court relied on the doctrine of dual prosecution, which permits both the state and the federal government to convict the defendant, when his conduct is punishable under the laws of both sovereigns.[20]

The concept of vindictive prosecution by two separate sovereigns requires a finding of complicity between the state and federal

---

**14.** This evidentiary hearing was conducted with regard to whether the federal prosecutor had selectively prosecuted Bassford. Our decision concerns the district's court's denial of an evidentiary hearing regarding the state's selective referral.

**15.** The district court holding relied on the principle of "dual sovereignty", which permits dual prosecutions under both federal and state law for the same act. *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). The theory is also frequently invoked by the government to counter double jeopardy challenges. *See, e.g., United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Bartkus v.*

*Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).

**16.** 699 F.2d 63 (2d Cir.1983).

**17.** *Id.* at 68.

**18.** *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

**19.** *Ng,* 669 F.2d at 68.

**20.** *Id.; see* note 15.

prosecutors.[21] The *Ng* court found no evidence of complicity and, thus, no basis for the claim of vindictive prosecution. In the present case, the evidence allows only the conclusion that the federal prosecutor's role was passive. Mr. Cohen's testimony, accepted by the trial judge, refuted any inference that the state and federal prosecutors cooperated to single out Mr. Bassford for special treatment. The federal government was not a "tool" of the state, as that term was employed by the *Ng* court.

C. Even if we were willing to impute the state's motives to the federal prosecutor, Bassford has failed to show that the state's motives were improper. The defendant alleges that only one case, other than the cases of his three former co-defendants and his own case, arising from cultivation of marijuana in the 1983 growing season, were referred for federal prosecution. The district court rejected a request for an investigation to discover the actual number of state prosecutions that were *not* referred because Bassford did not "specify in what respects those defendants were 'similarly situated', e.g., whether they were cultivating a similar number of plants or when these cases arose." [22] The district judge observed, and we agree, that even assuming a discriminatory effect could be shown, an evidentiary hearing was not justified because the defendant did not show that the state prosecutor's selectivity was motivated by discriminatory intent.

■ The second prong of the analysis requires the defendant to allege "some facts ... raising a reasonable doubt about the propriety of the prosecutor's purpose." [23] In this respect, Bassford asserts generally that his case was selectively referred because "he had been a vocal exponent for the legalization of marijuana and particularly for the legalization of home cultivation for personal use. His advocacy of this cause has resulted in numerous newspaper articles concerning the various cases against him, his lifestyle, and his views on marijuana." [24] The district court found that Bassford alleged the following facts in support of his claim:

> (1) his testimony at two public legislative hearings supporting legalization of home cultivation of marijuana, at least one of which was, not surprisingly, also attended by a state police captain;
>
> (2) a newspaper article in the Government's case file reporting defendant's public statements.[25]

*Bassford* failed to state when the legislative hearings occurred in relation to the referral. The district court relied on the lack of a "temporal relationship" in concluding that an improper motive was not sufficiently alleged. The defendant also failed to state when the newspaper article was published. In fact, as noted by the district court, it was published the day directly following his testimony before the legislature—at least three and one half months *after* the federal prosecutor accepted the state's referral. This time lag refutes any inference that the federal prosecution was in retaliation of the appellant's advocacy for the legalization of marijuana.[26] We hold that each specific allegation

---

**21.** *Ng,* 669 F.2d at 68.

**22.** Although an investigation might cure the defendant's inability to articulate the specifics of who, why, and how many constitute a group of similarly situated individuals, the appellant has not appealed the denial of his motion for such an investigation.

**23.** *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981).

**24.** Brief for appellant at 6.

**25.** The appellant also alleged that police invited media coverage of the execution of the search warrant. This allegation is immaterial to the state prosecutor's motives for referral, as it relates only to the state of mind of the arresting officers. Their motives for inviting media coverage cannot be imputed to the state prosecutor. *United States v. Bourque,* 541 F.2d 290, 293 (1st Cir.1976).

**26.** Appellant also contends that the federal prosecutor gave him a copy of the article at his initial appearance in federal court. In examining the motives of the federal prosecutor (which are not pertinent to the issue of selective referral presented here), the district court properly noted that no impropriety would be inferred. The article also reported Mr. Bassford's admission of his illegal activities, and thus, had evidentiary bearing on the case.

fails to raise a reasonable doubt about the propriety of the state prosecutor's motives in referring this case.

■ "A mere allegation that the exercise of First Amendment rights led to the prosecution does not mandate a full evidentiary hearing." [27] Moreover law enforcement officials may focus their efforts on those who make public their animosity and violation of the law.[28] As noted by the court in *United States v. Johnson*, "selection ... is not impermissible solely because it focuses upon those most vocal in their opposition to the law which they are accused of violating." [29] The district court properly held that

> even assuming that the defendant was selected for federal prosecution, in part, on the basis of the publicity that his statements have received, there is no claim or indication that his selection was intended "to *prevent* his exercise of constitutional right[s]. Thus, even if the federal prosecution had been initiated in part because of the defendant's protests, such would not constitute an impermissible basis for [referral], and a ... evidentiary hearing to determine the connection between defendant's public statements and the [referral] would serve no purpose." (Citations omitted)

■ Furthermore, the evidence provides "countervailing reasons" [30] to justify referral of Bassford's case. In 1980, Maine police officers seized a marijuana crop from Mr. Bassford's property. He was prosecuted and acquitted in state court on misdemeanor charges of "furnishing" under Maine law.[31] In 1983, state police seized another marijuana crop from Mr. Bassford's property. The state attorney referred the case to the United States Attorney's office for prosecution under concurrent federal drug laws. The record reveals that the state attorney referred the case because "furnishing", a transactional intent provision, is difficult to prove in a "home cultivation" situation. The state attorney was also "dissatisfied" with the misdemeanor status of that crime. Federal law upgrades manufacture and intent to distribute to a felony.[32] Additionally, the United States Attorney for the District of Maine had recently adopted an open door policy for referral of concurrent drug violation cases. We agree with the district judge, that any inference of impropriety in the state prosecutor's motives is adequately rebutted by the above explanation.

### III.

In sum, Thomas Bassford was arrested by the State of Maine for cultivating a large amount of marijuana. His case was referred to the United States Attorney, who convicted Bassford for possession and intent to distribute marijuana in violation of federal law. Under *Ciraolo*, Bassford cannot claim a reasonable expectation of privacy from intentional aerial observations of his property. Nor has Bassford shown sufficient facts to support a finding of selective prosecution or to justify a further evidentiary hearing on the issue. Indeed, the state's explanation sufficiently rebuts any inference of their "selective referral" to federal prosecutors. The federal and state law enforcement officers agree: the felony penalties of the federal drug laws provide a more appropriate penalty for one found cultivating 227 marijuana plants; state law, in contrast, provides only misdemeanor penalties.

The judgment of the district court is AFFIRMED.

**27.** *United States v. Hazel*, 696 F.2d 473, 475 (6th Cir.1983).

**28.** *See Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Hazel*, 696 F.2d 473, 475 (6th Cir.1983); *United States v. Rickman*, 638 F.2d 182, 183 (10th Cir.1980); *United States v. Stout*, 601 F.2d 325, 328 (7th Cir.1979), *cert. denied*, 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979); *United States v. Johnson*, 577 F.2d 1304, 1309 (5th Cir.1978).

**29.** 577 F.2d 1304, 1309 (5th Cir.1978).

**30.** *United States v. Saade*, 652 F.2d 1126, 1135 (1st Cir.1981).

**31.** Me.Rev.Stat.Ann. tit. 17–A § 1106.

**32.** 21 U.S.C. § 841 (1982).