**UNITED STATES of America**

v.

**Edward A. COONEY.**

**Crim. No. 90–033 P.**

United States District Court,
D. Rhode Island.

Nov. 28, 1990.

Seymour Posner, Asst. U.S. Atty., Providence, R.I., for plaintiff.

Harold C. Arcaro, Jr., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The defendant moves to dismiss a Criminal Information in three counts, which was lodged against him, charging that he failed to file his income tax returns for the years 1983, 1984 and 1985. The motion to dismiss is premised on the allegations that the defendant is the subject of deliberate discrimination and that the present prosecution is based on selective, invidious, bad or other impermissible grounds. For reasons which follow, the defendant's motion to dismiss is denied.

### I.

I accept the facts as recited by the litigants in their respective memorandum; I reserve to each the right to disprove, through an evidentiary hearing, the conclusions I have drawn from their submissions.

It appears that on September 4, 1986, Revenue Officer Howard Sutton of the Internal Revenue Service (IRS) was assigned the frustrating task of collecting a delinquent tax account due from this defendant.

The agent's "Investigation History" records repeated unsuccessful efforts to personally meet with the defendant. The agent's futile quest began with a visit to defendant's house only to find, when he arrived, that the defendant was not there. This was followed by a telephone call the next day, which produced no results; the agent was advised the defendant was out of town. However, subsequently, the defendant did phone the agent and stated he would contact him on December 8, 1986 either by phone or personally; no such contact was ever made. On the trail again, the agent phoned defendant on January 21, 1987 and scheduled a meeting for January 27, 1987. Once more the results were negative—on the very day of the scheduled meeting, the defendant phoned stating he had injured himself and could not be present. In dogged pursuit, another appointment was scheduled for February 2— this time the defendant stated he could not meet because he had a slipped disc. On March 9, 1987, the agent tried again to see the defendant but could make no contact because the defendant was not at home.

In pursuing this case, the agent learned that the defendant owned the real estate in which he resided and had substantial taxable income for the years 1981 through 1985 for which no withholding had been taken nor tax returns filed. At this point, the agent prepared Form 3212, "Referral Report of Potential Fraud Cases," and referred the matter to the Criminal Investigation Division for further action.

The defendant does not dispute these facts but does factually offer in support of his motion the following:

a) "no other T.D.I. [taxpayer delinquency investigation], of which there have been many hundreds, has been referred to the Criminal Investigation Division for prosecution, or has ultimately been eventually prosecuted";

b) "the agent's impatience and the fact that the investigation had taken a long time" stimulated and inspired this selective prosecution;

c) the revenue agent failed to employ a number of statutory alternatives that could have resolved the delinquency problem, namely: 1) 26 U.S.C. § 7602(a) (requires an individual to give testimony or submit records within ten days or face the possibility of civil and/or criminal contempt); and 2) 26 U.S.C. § 6020(b) (creates a return

from the records available at the Service Center).

## II.

■ There is scant legal or factual authority to support the defendant's position. He rests primarily on *United States v. Penagaricano–Soler*, 911 F.2d 833 (1st Cir. 1990) and *United States v. Bourque*, 541 F.2d 290 (1st Cir.1976).

In the *Penagaricano–Soler* case, the president of a Puerto Rican bank was convicted of felony offenses on the basis of the bank's failure to file required currency transaction reports. The prosecution resulted from a

> massive investigation into bank money laundering operations-dubbed "Operation Greenback".... Defendant claimed selective prosecution, and moved to dismiss the indictment, and for discovery, on representations that several *mainland* banks were assessed civil penalties only, and that their officers were never prosecuted, despite billions of dollars in unreported currency transactions. Defendant pointed to public statements by several high-ranking officials (not connected with Justice or Treasury) that "Operation Greenback" was intended to put mainland bankers on notice, and that the Justice Department had prosecuted very few *mainland* bank officials, in contrast to its "massive raid" on Puerto Rico banks. All allegations were based on press reports.

*Id.* at 836.

The government's response revealed that some mainland banks were prosecuted and that, indeed, others were not. In those cases where there was no prosecution, bank officials had made voluntary disclosure following *internal* audits; therefore, instead, civil penalties were assessed. Furthermore, the government argued that its evidence showed disproportionately large cash deposit surplus in Puerto Rican banks as compared to other jurisdictions. Finally, the government directly attacked the selective prosecution accusation by showing that mainland banks were prosecuted and

that in two-thirds of the cases bank officials had been prosecuted as well.

The court denied the defendant's motion to dismiss and refused to order discovery.

I dwell upon this case because both sides cite it in support of their respective positions, and I feel its teaching is dispositive of this debate.

In the present case, the acts are different; the defendant's case was referred by the collection officer for criminal investigation because: a) in the normal course of his investigation, the officer, trying to collect a delinquent account, looked for assets; b) in the process of doing so, he learned that the defendant had not filed tax returns for the years 1981–1985, though he had substantial income for four of those five years; c) no vehicles were registered in the defendant's name although late model luxury vehicles were parked in the defendant's driveway; and d) that the defendant owned the real estate in which he resided. It was this information, coupled with the futility and frustration the agent experienced in trying to meet with the defendant, that initiated the questioned referral.

## III.

The law is quite clear. The First Circuit has pointed out in *Penagaricano–Soler, supra*, at 837, quoting from *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886) that:

> [t]hough the law itself be fair on its face and impartial in appearance, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

The court went on and detailed all relevant factors to be considered in resolving selective prosecution accusations.

> Now, as ever, the impartial administration of the criminal laws must be managed with limited law enforcement resources, *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *see also Bordenkircher v. Hayes*,

434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978), which entails the exercise of commensurate prosecutorial discretion in targeting criminal prosecutions, *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); *United States v. Goodwin,* 457 U.S. 368, 380 n. 11, 102 S.Ct. 2485, 2492 n. 11, 73 L.Ed.2d 74 (1982); *United States v. Bassford,* 812 F.2d 16, 21–22 (1st Cir.1987). Moreover,

> [s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Wayte,* 470 U.S. at 607, 105 S.Ct. at 1530.

Thus, in order to overcome the threshold presumption that the prosecutor acted "in good faith for reasons of sound governmental policy," *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981) (emphasis added); *see Bassford,* 812 F.2d at 19, the defendant must make a *prima facie* demonstration—

> (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. [emphasis added].

*United States v. Union Nacional de Trabajadores,* 576 F.2d 388, 395 (1st Cir. 1978) (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)). If the defendant makes the required *prima facie* showing, the government must demonstrate the absence of impermissible considerations in its decision to prosecute.

A selective prosecution claim merits evidentiary hearing if it alleges sufficient "facts a) tending to show that [defendant] has been selectively prosecuted, and b) raising a reasonable doubt about the propriety of the prosecutions' purpose," *Saade,* 652 F.2d at 1135, unless the government can present "countervailing reasons," *id.*

*Id.* at 837–38.

In addition to the foregoing law, the prosecutor states in his memorandum, which assertions I accept as being accurate, that "[t]he IRS Collection Manual spells out the procedures to be used by collection officer in all cases where there are indications of fraud, namely, the collection officer is not to solicit delinquent returns and he/she is to suspend any further activity on the case and refer it to the criminal investigation branch."

## IV.

The defendant argues that "[t]he evidence indicates that no other T.D.I., of which there have been many hundreds, has been referred to the Criminal Investigation Division for prosecution, or has ultimately been eventually prosecuted." In support, the affidavits of defense counsel and a former attorney in the Internal Revenue Service are submitted. These affidavits state that in their long experience dealing with "taxpayer delinquency investigation", they recall "no case in which a taxpayer was thereafter subject to criminal investigation or prosecution."

The defense further argues that the revenue officer was vindictive and did not issue a summons against the "defendant, under 26 U.S.C. § 7602(a), which would have required him to submit records and/or give testimony within ten (10) days or face the possibility of civil and/or criminal contempt. Nor did the agent, as required by 26 U.S.C. § 6020(b), create a return from the records available at the Service Center. (The case involves income almost entirely, if not entirely reported on Forms 1099, which were available at the Internal Revenue Service Center.) However, as to a non-prosecution year, a return was so prepared under 26 U.S.C. § 6020(b), there being an outstanding account for 1980 that

the same revenue agent took collection action."

## V.

On the basis of this record, I do not conclude that this defendant has been singled out for prosecution.

The investigation, conducted by the Internal Revenue Agent, was done in the normal course of the Revenue Department's business of collecting and investigating delinquent accounts. The agent made every effort to personally interview the defendant; the fact that such an interview never materialized can be traced to the defendant's own actions. In the process of the investigation, as would be expected, the agent searched for assets against which he could levy. An indication of fraud surfaced—failure to file returns for five years in spite of substantial taxable income during that period of time. The normal sequence of events required the agent to follow the uniform procedure set forth in the department's manual which called for cessation of all further activities and referral of the case to the Criminal Investigation Division. All of this comported with the government's overall enforcement plan. To overcome this, the defendant attempts to establish that others, similarly situated, have not been proceeded against and that the agent was personally vindictive and failed to follow alternative available procedures.

In its memorandum, the government does not affirmatively state that other T.D.I. accounts have been referred for criminal investigation. If, in fact, the present case is the only criminally referred T.D.I. case, then the defendant appears to have satisfied the first prong of the *Berrios, supra,* test to overcome the threshold presumption that the prosecutor acted "in good faith for reasons of sound governmental policy." *United States v. Saade, supra.* However, the inquiry does not end at the threshold. The First Circuit in *United States v. Union Nacional de Trabajadores, supra,* stated that "[p]rosecutors are entitled to broad discretion in deciding which cases to prosecute and a defendant seeking to dismiss an indictment bears a heavy burden of showing that the prosecutor's discretion was *invidiously* exercised." (emphasis added). Invidiousness is the second prong of *Berrios,* quoted by the First Circuit with approval in *Union Nacional de Trabajadores,* cited *supra.* This second prong must be satisfied; that is to say, to single out an individual for prosecution, standing alone, does not warrant the extraordinary relief of dismissal. The meaning of "invidious or bad faith" is refined and defined in *Berrios* as impermissible conduct based on considerations of race, religion or the "desire to prevent his exercise of constitutional rights." If the defendant succeeds in establishing that he alone was targeted and that the government's conduct was invidious, a *prima facie* case is made out which then requires the government to show that such improper factors were not part of its decision to prosecute.

Applying all that has been said to the case at issue, there is no merit to the defendant's position. To say that this is the only T.D.I. case referred for criminal prosecution is not enough; there is no evidence or even a suggestion that it is the only T.D.I. case involving a defendant who failed to file federal income tax returns for five years in spite of substantial income in four of those five years, that was referred for criminal investigation. Simply speaking, this indication of fraud negates the contention that the defendant was selectively prosecuted. Arguendo, even if we concede the defendant was a selected individual, the record is barren of any invidious conduct. I conclude that on this ground the defendant fails.

Traveling another road, the defendant argues that while he notes that the quoted language of *Berrios,* as to invidious conduct, speaks to constitutional grounds, the case law is not so restrictive. Resting on *United States v. Bourque,* 541 F.2d 290 (1st Cir.1976), he argues that the personal conduct of the agent, his vindictiveness, that is, bad faith, meets the second prong test. The defense claims the agent was impatient because it was taking so long to

obtain the returns and that this impatience is evidence of bad faith because he, the agent, "could have easily obtained Form 1099 information from the Service Center and prepared a return as he was *required* to do under 26 U.S.C. § 6020(b).... he could have issued a summons against the defendant under 26 U.S.C. § 7602(a), requiring the defendant to appear, answer questions and produce his records in ten (10) days, 26 U.S.C. § 7605." In substance, the defense urges that the agent's dereliction with regard to the statutory requirements combined with his impatience is *prima facie* evidence of bad faith.

In *Bourque*, the allegation was that the defendant "and [the District Director] had been embroiled in a personal dispute which culminated [in the District Director] bringing suit ... against one [of the defendant's] wholly owned corporations. [The defendant] further alleged that [the District Director] had threatened him with adverse rulings in the administrative phase of the ongoing criminal tax investigation." 541 F.2d at 292.

After citing the law set forth in *Berrios*, *supra*, the court did state that "[w]hile recent cases have dealt with prosecutions instituted in retaliation for defendant's exercise of constitutional rights (citations omitted), personal vindictiveness on the part of the prosecutor or the responsible member of the administrative agency recommending prosecution would also sustain a charge of discrimination.... (citation omitted) [The court went on to say that in the case before it], the defendant failed to allege, or make a substantial showing that prosecutions are normally not instituted for the offenses with which he was charged. While information concerning the rate of prosecution against known offenders of the tax laws is peculiarly within the knowledge of the IRS ... the charges against [the defendant] taken as a whole ... were serious ones for which prosecution, although not automatic, is a common result." *Id.* at 293.

This case is of no help to this defendant simply because he has failed to show any vindictiveness. In an affidavit executed by the revenue officer and on which defense counsel bottoms his case, the IRS agent outlined the number of times he unsuccessfully attempted to contact the defendant. He then said, "I grew impatient. Because of that and the long time the case had taken, I referred the case to the Criminal Investigation Division." This affidavit does not state that in the course of his investigation the officer learned of the defendant's failure to file returns for the years 1983, 1984 and 1985. Be that as it may, it is a fact that when the case was referred, the 1983–1985 income tax returns had not been filed and that the agent had uncovered this fact as well as the substantial income the defendant enjoyed during this period. Furthermore, "impatience" defined as intolerance of delay or restless eagerness (Oxford Universal Dictionary) is in no way synonymous with the revengeful, avenging ingredient of vindictiveness. Moreover, the defendant's lament is that he is being prosecuted for failing to file returns—that decision was not even made by the T.D.I. officer. Here as in *Bourque*, "[i]f the allegations against [the T.D.I. officer] had been made against the prosecutor or one intimately bound up in the trial process, [I] might consider this suggestion more seriously. As it is, [I am] asked to reach back, not only behind the grand jury action, but to a time prior to the final decision of the Department of Justice and the penultimate decision of the Regional Counsel to find misconduct." *Id.* at 293. Such a refluence has no place in this case.

Resting on *Bourque*, (which case, incidentally, was tried before me by the same competent defense counsel approximately fourteen years ago), I note the defendant has not, nor do I believe he can, made a showing that the IRS does not normally prosecute individuals who fail to file their income tax returns—especially if such individual had substantial earnings during the period of time involved. Under our voluntary system of disclosing taxable income, failure to file is a serious offense. Though, undoubtedly, there may be exceptions, normally prosecution follows.

Finally, the direct answer to the defendant's contention that the Revenue Officer was required, pursuant to 26 U.S.C. § 6020(b), to prepare returns for the defendant is found in *United States v. Verkuilen*, 690 F.2d 648, 657 (7th Cir.1982) (IRS not required to file returns for a person who has failed to do so; discretion given to IRS as to filing return does not relieve taxpayer of his obligation).

### Conclusion

For the reasons I have set forth, the defendant's motion to dismiss should be denied. However, since the factual recitations made herein are based on allegations made in the memoranda and cursory affidavits submitted to me by the parties, I will consider granting the defendant an evidentiary hearing. I do so with the admonition that if the defendant can show no more than what he has already asserted, it would be a waste of the Court's time to hold such a hearing. Therefore, if the defendant presses for an evidentiary hearing, he will file a motion to that effect within five days of the date of this order together with a detailed offer of proof.

So ordered.