**UNITED STATES of America, Plaintiff,**

v.

**Lenwood Randolph
JOHNSON, Defendant.**

**Cr. A. 91–CR–0041.**

United States District Court,
D. Colorado.

May 31, 1991.

Wayne Campbell, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Peter Schild, Boulder, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Before me are defendant Lenwood Randolph Johnson's (Johnson) two motions to dismiss the indictment. Johnson is charged in four counts of possessing with intent to deliver, and distributing cocaine base in violation of 21 U.S.C. § 841(a)(1). His challenge to the indictment stems from the significantly higher penalties imposed for cocaine base offenses compared to cocaine offenses. Johnson contends that the distinction between cocaine base and cocaine is unconstitutionally vague on its face and that the United States' decision to charge him as it did violates his right to equal protection of the law. After reviewing the briefs and holding an evidentiary hearing, I conclude that Johnson fails to establish the asserted constitutional violations. Consequently, I deny the motions.

The sentencing guidelines provide for more severe sentencing for cocaine base crimes than cocaine crimes. The guidelines provide the same minimum sentence for crimes involving 50 grams of cocaine base as for crimes involving 5,000 grams of cocaine. *See United States v. Buckner*, 894 F.2d 975, 978–79 (8th Cir.1990).

Johnson's motions to dismiss are based on two due process grounds. First, he contends that the distinction between cocaine and cocaine base is unconstitutional on its face because the distinction has no rational relationship to a legitimate governmental interest and is vague. Second, he argues that the distinction between cocaine and cocaine base is unconstitutional as applied because federal prosecutors in this district (1) single out black defendants for federal prosecution on cocaine base charges, while prosecutors charge defendants of other races in Colorado state court where the Colorado criminal code recognizes no distinction between cocaine base and cocaine, and (2) single out black defendants for federal prosecution on cocaine base charges, while federal prosecutors bring less onerous cocaine charges against defendants of other races.

## I. DUE PROCESS: UNCONSTITUTIONAL ON ITS FACE

■ Johnson first contends that the distinction between cocaine base and cocaine fails to meet the rational relationship test and is unconstitutionally vague. This argument was rejected by the Tenth Circuit in *United States v. Turner*, 928 F.2d 956, 960 (10th Cir.1991). The Tenth Circuit stated that it "join[s] those circuits holding that the different penalties for cocaine base and cocaine in its other forms do not violate due process." *Turner*, 928 F.2d at 960. Although the Tenth Circuit left open the possibility that defendants may show that the offending substance was cocaine and not cocaine base, *Turner*, 928 F.2d at 960 n. 1, Johnson makes no such argument.

Consequently, *Turner* is dispositive. *See United States v. Jones*, 931 F.2d 898 (9th Cir.1991); *United States v. Buckner*, 894 F.2d at 978–80; *United States v. Collado–Gomez*, 834 F.2d 280, 280–81 (2d Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988); *see also United States v. Davis*, 900 F.2d 1524, 1530 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990).

## II. EQUAL PROTECTION: UNCONSTITUTIONAL AS APPLIED

■ Johnson admits that, because he is charged under a federal statute, his equal protection argument is viable only through the due process component of the fifth amendment. *Wayte v. United States*, 470 U.S. 598, 608 n. 9, 105 S.Ct. 1524, 1531 n. 9, 84 L.Ed.2d 547 (1985). Although he acknowledges the holding in *Turner*, Johnson argues that *Turner* is distinguishable because the equal protection component of the due process clause was not addressed by the Tenth Circuit. I agree that *Turner* does not govern Johnson's claim that the challenged statute is unconstitutional as applied.

I begin the analysis with

the basic principle that a defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." *Whitus v. Georgia*, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599 (1967). [Footnote omitted]. A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination "had a discriminatory effect" on him. *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). Thus to prevail under the Equal Protection clause, [defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose.

*McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987) (emphasis in original). To raise a question as to the propriety of the United States' cocaine base charges, Johnson must go beyond presenting facts tending to show that the United States knew of the discriminatory consequences of its cocaine and cocaine base prosecution policy but implemented the policy in spite of the adverse effects on the suspect class. Johnson must also establish that the United States *intended* such a result. *See United States v. Kerley*, 787 F.2d 1147, 1149 (7th Cir.1986).

■ The prosecution against Johnson is in violation of the equal protection component of the due process clause if it is brought against him selectively because of his race. *See United States v. Dukehart*, 687 F.2d 1301, 1303 (10th Cir.1982); *United States v. Dawes*, Nos. 88–10002–01, 88–10002–02 & 90–10036.01, 1990 WL 171074 (D.Kan. Oct. 15, 1990) (LEXIS Genfed library, Dist file). To establish a prima facie case of such a constitutional violation, Johnson must satisfy a two-part test. First, he must show that he was singled out for prosecution while others similarly situated were not. Second, he must establish that his prosecution is based deliberately and invidiously on an unconstitutional consideration. *National Commodity and Barter Assoc'n v. Gibbs*, 886 F.2d 1240, 1248 n. 7 (10th Cir.1989); *C.E. Carlson, Inc. v. Securities and Exchange Comm'n*, 859 F.2d 1429, 1437–38 (10th Cir.1988); *United States v. Bohrer*, 807 F.2d 159, 161 (10th Cir.1986); *Dukehart*, 687 F.2d at 1303.

■ Johnson offers no evidence specific to his case to show racial animus in the United States' decision to prosecute. Instead, he seeks to establish a prima facie case through a statistical survey alone. Defendants may use statistical evidence to show discriminatory intent in "certain limited contexts." *McCleskey*, 481 U.S. at 293, 107 S.Ct. at 1767. Here, where Johnson is neither attempting to show an equal protection violation in the selection of a jury nor prove a Title VII violation, the numerical evidence must establish a "stark" pattern to suffice as the sole proof of discriminatory intent. *McCleskey*, 481 U.S. at 293, 107 S.Ct. at 1767; *see Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977).

To aid Johnson in developing his equal protection defense, I granted his request for raw anonymous data from presentence reports prepared between November 1, 1987 and March 31, 1991, maintained by the United States Probation Department for the District of Colorado. Johnson was provided data on past prosecutions charging cocaine base and cocaine crimes. The data show that, between November 1, 1987 and March 31, 1991, twenty-three defendants were convicted of at least one cocaine base offense. Out of this pool, twenty-two were black and one was white.

Johnson argues that these data establish a prima facie case that black defendants have been singled out by federal prosecutors in this district to be prosecuted for cocaine base offenses rather than cocaine offenses. Although Johnson's equal protection argument is not well-defined, implicitly he provides two theories. First, Johnson argues that in this district, black defendants are prosecuted under federal law for cocaine base offenses in the Federal District Court of Colorado rather than under Colorado law in Colorado state courts. Under Colorado law, there is no distinction between cocaine base and cocaine. Second, he argues that in the Federal District of Colorado, black defendants are prosecuted for cocaine base offenses while defendants of other races are prosecuted for cocaine offenses.

His first argument is without support, statistical or otherwise. There is no showing that race is a factor in determining whether to bring charges under Colorado state law or federal law, much less a "stark" showing. The statistics provide no insight at all into the racial composition of Colorado state cocaine offense convictions or prosecutions. Although Johnson was initially charged in state court, there is no showing of constitutional impropriety but for Johnson's conclusory assertion that the United States was forum shopping, motivated by racial animus.

His second argument is similarly flawed. The United States Attorney is afforded broad prosecutorial discretion. The Supreme Court "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *see United States v. Bassford,* 812 F.2d 16, 19 (1st Cir.), *cert. denied,* 481 U.S. 1022, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987). The question, then, is whether the evidence shows that Johnson was singled out from others similarly situated for prosecution on cocaine base offenses, rather than cocaine offenses, because of his race.

It seems alarming that 96% of the defendants convicted in the district of Colorado for cocaine base offenses are black. This naked statistic alone, however, does not permit the conclusion that Johnson was prosecuted because of his race. Statistics that show that chance is an unlikely explanation are not, by themselves, sufficient to demonstrate that race is the more likely explanation. *See Palmer v. United States,* 794 F.2d 534, 539 (9th Cir.1986) (ADEA claim). Here, no analysis was undertaken to account for any number of variables that could explain the seeming racial disparity. *See McCleskey,* 481 U.S. at 287, 107 S.Ct. at 1763–64. Failure to account for or exclude the many confounding variables that could explain the disparity strips these statistics of any value as valid predictors of causation.

Because black citizens comprise four percent of the population of the state, Johnson asserts, four percent of those convicted for cocaine base offenses should be black. Johnson fails, however, to provide any evidence on the prevalence of cocaine base among different racial or ethnic groups. His assumption that all groups use cocaine base in equal and direct proportion to their numbers in the population is unsupported. In this respect, he provides no competent evidence of discriminatory intent. *See United States v. Salazar,* 720 F.2d 1482, 1487 (10th Cir.1983), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985). One must speculate that cocaine base use among different racial groups does not vary to the degree that the conviction rate

varies. I may not engage in such conjecture. *See United States v. Esparsen*, 930 F.2d 1461, 1467–68 (10th Cir.1991).

Additionally, even if I assume, as Johnson urges, that because four percent of Colorado's population is black (1) the black population in the pool of those in Colorado who use cocaine base is four percent and (2) absent racial animus, the *predicted* black population in the pool of defendants prosecuted for cocaine base crimes is four percent, Johnson fails to provide the *observed* black population in the pool of defendants prosecuted for cocaine base crimes. Rather, he provides only the number and race of those actually *convicted.* Consequently, I have *no* observed prosecution rate with which to compare the predicted prosecution rate. Absent expert testimony or additional statistical evidence establishing that the prosecution ratio may be derived from the observed conviction ratio, I am left nothing with which to compare the expected prosecution ratio.

As a matter of law, this is not the "stark" showing necessary to establish a prima facie case of selective prosecution in violation of the equal protection component of the due process clause. *See C.E. Carlson, Inc.,* 859 F.2d at 1437–38 (to establish prima facie case of selective prosecution, defendant must show that (1) he was singled out for *prosecution* from among others similarly situated and (2) *prosecution* was motivated by unconstitutional consideration); *Bohrer,* 807 F.2d at 161 (same); *Dukehart,* 687 F.2d at 1303 (same). The statistics here do not show that Johnson was singled out for prosecution on cocaine base charges while others similarly situated were not, that the United States is motivated in any degree by race in determining whether to prosecute on cocaine base charges rather than cocaine charges, or that the decision to prosecute Johnson in particular was because of his race.

Finally, there was a total of only twenty-three convictions used in the analysis, and the scope of time was less than three and one-half years. Johnson makes no showing, by expert testimony or otherwise, that this modestly sized informational pool is an adequate base from which to draw verifiable and reasonably valid conclusions.

Consequently, Johnson does not show that he nor any class of defendants has been discriminated against in either the United States' selection of federal law over state law or its choice of cocaine base charges over cocaine charges. I may not disturb the exercise of prosecutorial charging discretion here.

■ Furthermore, although the United States maintains that because Johnson fails to establish a prima facie claim of racially based selective prosecution, it need not explain the non-discriminatory reason for the statistical results, it provides evidence that its choice of forum and charges was made without regard to race. Police officers Joseph Betts and George Radney testified credibly that race was not a consideration in making any decision regarding the arrest, charging or prosecution of Johnson. Betts testified further that the prosecution was brought in federal court rather than state court for three reasons. First, he testified, the alleged offenses were committed in two Colorado counties, Arapahoe and Adams. Prosecution in state court would have required the prosecution to spend the time and resources to either consolidate the charges or conduct two separate trials. Second, Betts testified that the amount of cocaine base at issue warranted federal prosecution. Third, he testified that he preferred the enhanced penalties of the federal charges.

■ The first two reasons are legitimate and not beyond broad prosecutorial discretion. *See Batchelder,* 442 U.S. at 123–24, 99 S.Ct. at 2203–04; *Bassford,* 812 F.2d at 19. The third reason is also legitimate. That the United States may be influenced by the array of penalties available under different criminal statutes does not make the selection of charges under any one of the choices a violation of equal protection. *Batchelder,* 442 U.S. at 125, 99 S.Ct. at 2204–05.

Johnson fails to establish a prima facie case of violation of the due process clause or the equal protection component of the

due process clause. Accordingly IT IS OR-DERED that

(1) Lenwood Randolph Johnson's Motion to Dismiss Indictment—Violation of Due Process, is DENIED;

(2) Lenwood Randolph Johnson's Motion to Dismiss Indictment—Violation of Equal Protection, is DENIED.