UNITED STATES of America,
Appellee,

v.

Henry PETERSON, Defendant,
Appellant.

No. 99–2294.

United States Court of Appeals,
First Circuit.

Heard Oct. 2, 2000.

Decided Dec. 5, 2000.

James M. Fox, by appointment of the court, on brief for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Terrence P. Donnelly, Assistant United States Attorney, were on brief, for appellee.

Before TORRUELLA, Chief Judge, LYNCH and LIPEZ, Circuit Judges.

LYNCH, Circuit Judge.

Henry Peterson was convicted of five federal narcotics and firearms offenses on August 27, 1999. Peterson challenges the federal prosecution as vindictive and a violation of equal protection under the Fourteenth Amendment because it was based on the same underlying criminal activities as a prior Rhode Island prosecution. Peterson also claims that the trial judge abused his discretion by not reopening the

case to allow Peterson to testify on his own behalf.

In addition, Peterson challenges the district court's application of the Sentencing Guidelines, which, based on his offense level, his criminal history, and the court's finding that three prior convictions qualified him as an "armed career criminal" under 18 U.S.C. § 924(e), prescribed a sentence between 262 and 327 months. He argues that one of the predicate offenses used to determine his armed career criminal status should not count as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii). Peterson further claims that the sentencing court incorrectly enhanced his sentence for the use of weapons "in connection with" his narcotics offenses.

We agree with Peterson that one of his offenses does not qualify as a "violent felony" for purposes of § 924(e), but reject his remaining arguments. Accordingly, we affirm the conviction and remand for resentencing.

## BACKGROUND

Henry Peterson was arrested in Cranston, Rhode Island on February 4, 1998, while in possession of five grams of crack cocaine. A consented-to search of his apartment revealed marijuana, drug paraphernalia, several firearms, and ammunition. A search of Peterson's girlfriend's apartment uncovered more marijuana and an additional firearm. The girlfriend, Tanya Baptiste (who had also been arrested), claimed that the drugs and gun found in her apartment both belonged to Peterson.

In state court, Peterson pled *nolo contendere* to possession with intent to distribute controlled substances, firearm possession after conviction for a crime of violence, and possession of stolen goods. He received a ten-year sentence, seven years of which were suspended.

Federal prosecutors, apparently dissatisfied with the length of the state sentence, then sought indictment under federal narcotics and firearms law. At trial, the defense rested without offering evidence. The court alerted the jury that closing statements were forthcoming, recessed, and then held a charging conference. At that belated point, Peterson's counsel informed the court that Peterson now wished to testify on his own behalf, despite having decided not to testify during his case-in-chief. The district judge refused to reopen the evidence to allow Peterson to testify.

Peterson was ultimately convicted on all five counts, including two counts of 18 U.S.C. § 922(g), being a felon in possession of a firearm. Based on three prior state convictions for breaking and entering, he was sentenced as an armed career criminal under 18 U.S.C. § 924(e)(1), which provides for a fifteen-year minimum sentence. The combination of his armed career criminal status and the finding that his weapon possession was "in connection with" a controlled substance offense resulted in an offense level of 34 under the Sentencing Guidelines. Peterson was sentenced accordingly.

## DISCUSSION

We first dispose of Peterson's trial-related claims and then address his claims relating to sentencing.

### I. Vindictive Prosecution Claim

Peterson admits that prosecution on both state and federal charges is constitutionally permissible under the dual sovereignty doctrine. *See Heath v. Alabama*, 474 U.S. 82, 88–89, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). He also acknowledges that the federal government's *Petite* policy [1] confers no substantive rights upon de-

---

1. The policy requires federal prosecutors to obtain permission from the Department of Justice before engaging in a prosecution based on "alleged criminality which was an ingredient of a previous state prosecution against that person." *McCoy, supra,* at 712

fendants. *See United States v. McCoy,* 977 F.2d 706, 712 (1st Cir.1992).

■ Peterson thus premises his objection to his federal prosecution on either prosecutorial vindictiveness or an equal protection violation. Because Peterson failed to raise a claim of vindictive prosecution prior to trial, the claim is waived and we review for plain error. *See United States v. Gary,* 74 F.3d 304, 313 (1st Cir. 1996); *United States v. Bradstreet,* 135 F.3d 46, 50 (1st Cir.), *cert. denied,* 523 U.S. 1122, 118 S.Ct. 1805, 140 L.Ed.2d 944 (1998). We presume that the prosecutor acted in good faith, and did not prosecute in a vindictive manner. *See United States v. Bassford,* 812 F.2d 16, 19 (1st Cir.1987). To rebut this presumption and obtain an evidentiary hearing on the issue,[2] the defendant must allege facts (1) tending to show selective prosecution, and (2) raising a reasonable doubt about the propriety of the prosecution's motive. *See Gary,* 74 F.3d at 313.

■ Peterson fails to make either showing. First, to show selective prosecution, Peterson must show "that [he] was prosecuted while others similarly situated were not." *Bassford,* 812 F.2d at 20. Peterson argues that his girlfriend Tanya Baptiste was similarly situated, yet faced no federal prosecution. However, Baptiste was a small time pawn to Peterson's king: he directed the narcotics distribution operation, while she merely participated in it. Thus, she was not similarly situated to Peterson. Second, Peterson has not shown that the government's prosecution was in bad faith. He claims that the government acted with the sole motive of prolonging his sentence. But such motive is a legitimate one for successive prosecution. *See United States v. Stokes,* 124 F.3d 39, 45 (1st Cir.1997); *see also Bassford,* 812 F.2d at 19 (impermissible conditions are

those such as race, religion, or the desire to prevent the exercise of the defendant's constitutional rights); *id.* at 20 ("[T]he conduct of two independent sovereigns does not lend itself to the concept of vindictive prosecution.") (citations omitted). On these facts, we cannot find any error, much less the plain error required for us to act on a waived claim.

■ Alternatively, Peterson suggests that his federal prosecution violated the Equal Protection Clause. It is a violation of equal protection for the government to base prosecution on an unjustifiable standard or arbitrary classification. *See Gary,* 74 F.3d at 313. But there is no evidence of either here.

We therefore find no error in Peterson's prosecution.

## II. Failure to Reopen the Evidence to Permit Peterson to Testify

■ At trial, after the defense rested, the court told the jury to expect closing arguments within the hour and went into recess; after recess, the court held a brief charging conference. At the end of the conference, counsel for Peterson told the court that Peterson now wished to testify on his own behalf. Counsel noted that, until now, Peterson had agreed with his attorney's decision not to put on any evidence in the case. Furthermore, counsel advised the court that for ethical reasons he could not examine Peterson if Peterson were allowed to testify. The district court refused to reopen the evidence in order to allow Peterson to testify. Peterson claims that the district court's refusal to do so violated his constitutional right to testify in his own defense.

■ It is true that a criminal defendant has a constitutional right to testify in

---

(internal quotation marks omitted); *see Petite v. United States,* 361 U.S. 529, 530–31, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) (per curiam). The prosecutor in this case sought and received such permission.

2. For a summary finding of vindictive prosecution from this court, the defendant faces an even higher burden. *See Bassford,* 812 F.2d at 19.

his own defense. *See Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). However, the right to testify is not absolute; it must sometimes "bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 55, 107 S.Ct. 2704 (internal quotation marks and citation omitted). Hence, a defendant does not have an unrestricted right to testify at any point during trial. Generally, if he wishes to testify, he must do so before he rests his case; otherwise, he can move the trial court to reopen the evidence, but the choice whether to reopen is left to the court's sound discretion. *See United States v. Santana,* 175 F.3d 57, 64 (1st Cir.1999). Such a rule serves to ensure that the trial proceeds in a fair and orderly manner, with the defendant's testimony occurring when the judge, jury, and prosecution reasonably expect it. *See United States v. Jones,* 880 F.2d 55, 59–60 (8th Cir.1989).

▮▮ Thus, in reviewing whether the district court properly exercised its discretion not to reopen the evidence, we look to whether the court properly weighed the defendant's right to testify against the need for order and fairness in the proceedings. *See Rock,* 483 U.S. at 56, 107 S.Ct. 2704 ("In applying its evidentiary rules a [court] must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify."). In conducting this inquiry, we find helpful the Fifth Circuit's decision in *United States v. Walker,* 772 F.2d 1172 (5th Cir.1985), where the court enumerated the factors a district court must consider in deciding whether to reopen the evidence to allow a defendant to testify:

> In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion.

The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.

*Walker,* 772 F.2d at 1177 (citations and quotation marks omitted).[3] In short, the court must consider whether the likely value of the defendant's testimony outweighs the potential for disruption or prejudice in the proceedings, and if so whether the defendant has a reasonable excuse for failing to present the testimony during his case-in-chief.

Peterson argues that, given the timeliness of his motion to reopen, it posed no threat of disrupting or prejudicing the proceedings. We agree that the small delay posed a relatively small threat. Peterson moved to reopen approximately a half-hour after the defense rested. During that time, counsel for both sides prepared their closing arguments during recess, and the court then conducted a very simple charging conference lasting no more than a few minutes; other than that, nothing of substance took place. Thus, while reopening the evidence always can be expected to disrupt trial proceedings to some extent, here the disruption would have been comparatively minor. *Compare United States v. Parker,* 73 F.3d 48, 54 (5th Cir.), *opinion vacated upon reh'g en banc,* 80 F.3d 1042 (5th Cir.1996), *and reinstated in relevant part,* 104 F.3d 72 (5th Cir.1997) (finding timeliness of motion to reopen to weigh

---

**3.** *Walker* was decided prior to *Rock*'s determination of a constitutional right to testify. The *Walker* court explicitly refrained from answering the question whether a defendant has a constitutional right to testify, but the court noted that it did not wish to "imply that if we were to determine that a defendant had a constitutional right to testify we would necessarily apply a different analysis to the issue." *Walker,* 772 F.2d at 1179 n. 10.

in defendant's favor where motion was made one hour after defense rested, during which hour court recessed for lunch), *with Walker*, 772 F.2d at 1177 (finding delay of one day to weigh slightly against defendant), *and United States v. Paz*, 927 F.2d 176, 179 (4th Cir.1991) (no abuse of discretion in denying motion to reopen where motion was made after verdict was reached).

■■■ Nonetheless, while small, the potential for disruption upon reopening the evidence was not insignificant. For example, reopening the evidence may have confused the jurors after they had been told to expect closing arguments when they returned from recess. Moreover, Peterson's attorney had indicated he would not be able to participate in any examination of Peterson, posing procedural problems for the judge if Peterson were permitted to testify. Given the potential for disruption in this sense, the district court was at liberty to deny the motion to reopen if Peterson's testimony was likely to be of little value. And the record sufficiently supports that conclusion. Peterson gave the court hardly any indication as to what he wished to testify about, stating only he "just want[ed] to bring out certain facts about certain issues" that his counsel allegedly failed to develop during cross-examination of the government's witnesses. In the court's opinion, Peterson was "playing games," possibly maneuvering to lay the grounds for a future § 2255 petition—a suspicion bolstered by the fact that throughout the trial, Peterson had, on the record, accused his attorney of working for the government and deliberately attempting to throw the trial. *Cf. United States v. Stewart*, 20 F.3d 911, 917 (8th Cir.1994) (no abuse of discretion where value of defendant's testimony was cast in doubt by previous efforts to delay and disrupt trial). Most important, Peterson's attorney cast grave doubt over the likely value of Peterson's testimony by repeatedly insisting that he would not be able to put Peterson on the stand given his ethical duties to the court—thereby strongly suggesting that Peterson planned to commit perjury. Ordinarily, in light of the defendant's constitutional right to testify, we would presume a defendant's testimony to be of significant value, *see Walker*, 772 F.2d at 1178 (finding testimony of a defendant in his own trial to be of "inherent significance"); but the facts of this case are sufficient to rebut this presumption.

Finally, as to the reasonableness of Peterson's excuse for not testifying during his case-in-chief, Peterson offered no excuse, let alone a reasonable one. Peterson had ample time during his case-in-chief to offer testimony; he admitted that he and counsel had agreed that he would not exercise this option. Even assuming Peterson's testimony would have been valuable, Peterson still owed the court some sort of reasonable explanation for his sudden change in tack. *Cf., e.g., Parker*, 73 F.3d at 54 (finding defense counsel's mistake reasonable excuse); *Walker*, 772 F.2d at 1183–84 (finding "not significantly unreasonable" defendant's excuse that during case-in-chief he was too emotionally distraught to testify). Without such a requirement of excuse, the rule generally limiting testimony to the evidence-taking stage of a trial would hardly be a rule at all, and it would be too easy for a defendant to postpone testifying for strategic reasons until after the close of evidence.

In these circumstances, we find no abuse of discretion and no infringement of Peterson's constitutional right to testify.

## III. Armed Career Criminal Status

The Armed Career Criminal Act, 18 U.S.C. § 924(e), imposes a fifteen-year minimum sentence on offenders of section 922(g) who have three previous "violent felony" convictions. What constitutes a "violent felony" for the purposes of this section is a question of federal law, *see Taylor v. United States*, 495 U.S. 575, 591, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and is controlled by 18 U.S.C. § 924(e)(2)(B), which defines the term in relevant part as:

any crime punishable by imprisonment for a term exceeding one year ... that—

...

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Peterson admits that this language covers two of his prior state convictions, but challenges the inclusion of a third conviction for breaking and entering under R.I. Gen. Laws § 11–8–2. The sentencing court held the conviction to fall within the section's scope and so imposed the mandatory minimum required by the ACCA. We review de novo, United States v. Sacko, 178 F.3d 1, 2–3 (1st Cir.1999), and reverse.

 In determining whether Peterson's conviction under § 11–8–2 qualifies as a "violent felony," we look to the statutory definition, rather than the specific facts, of Peterson's crime. See Taylor, 495 U.S. at 600, 110 S.Ct. 2143. Rhode Island law sets out a graduated series of statutory breaking and entering offenses. See R.I. Gen. Laws §§ 11–8–1 et seq. Peterson was convicted under the least serious among them. The offense is defined as follows:

Unlawful breaking and entering of dwelling house. Every person who shall break and enter at any time of the day or night any dwelling house or apartment, whether the same is occupied or not, or any outbuilding or garage attached to or adjoining any dwelling house, without the consent of the owner or tenant of such dwelling house, apartment, building, or garage, shall be imprisoned for not less than one (1) year and not more than five (5) years or fined not more than two thousand dollars

($2,000) or shall suffer both such fine and imprisonment.

R.I. Gen. Laws § 11–8–2.

Peterson argues that § 11–8–2 does not rise to the level of a "violent felony" because it does not include a requirement that the defendant break and enter with intent to commit a crime.[4] The offense thus stands in contrast to the more serious breaking and entering crimes in Rhode Island, which do require criminal intent, R.I. Gen. Laws §§ 11–8–3 to –6, and the statutory crime of burglary, § 11–8–1, which has been construed to require criminal intent as a matter of common law, State v. O'Rourke, 121 R.I. 434, 399 A.2d 1237, 1238 (R.I.1979). Section 11–8–2 also stands in contrast to the breaking and entering offenses that we have previously determined to be violent felonies. All of those offenses included a criminal intent requirement. See United States v. Sawyer, 144 F.3d 191, 194–95 (1st Cir.1998) (Me.Rev.Stat.Ann.tit.17–A, § 401); United States v. Payne, 966 F.2d 4, 8–9 (1st Cir. 1992) (Mass. Gen. Laws ch. 266, §§ 17–18); United States v. Paleo, 967 F.2d 7, 10 (1st Cir.1992) (unspecified Massachusetts statutes); United States v. Fiore, 983 F.2d 1, 4 n. 6 (1st Cir.1992) (R.I. Gen. Laws § 11–8–4); United States v. Patterson, 882 F.2d 595, 601–02 (1st Cir.1989) (Mass Gen. Laws ch. 266, §§ 16, 18).

██ As a matter of statutory construction, we agree with Peterson that the lack of a criminal intent requirement places § 11–8–2 outside the realm of a "violent felony." Congress specified in § 924(e) the type of breaking and entering offense that qualifies as a violent felony—burglary—and that offense requires criminal intent. Burglary is one of a handful of offenses specifically listed in § 924(e)(2)(B) as a violent felony. As the Supreme Court made clear in Taylor v. United States,

---

4. Peterson also points out that § 11–8–2 covers break-ins of both occupied and unoccupied dwellings, the latter of which, he contends, are non-violent crimes; accordingly, he concludes, the sentencing court was obliged

to examine the indictment and jury instructions in Peterson's case to determine whether Peterson was convicted of breaking into an occupied dwelling. We do not address this argument.

*supra*, Congress intended the term "burglary" to encompass a large subset of breaking and entering offenses. Specifically, "burglary" encompasses those breaking and entering offenses defined to include two elements: first, the defendant must break and enter into a "building or structure"; second, the defendant must break and enter "with intent to commit a crime." *See Taylor*, 495 U.S. at 599, 110 S.Ct. 2143 ("[A] person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.") Because Peterson's breaking and entering offense lacked any criminal intent element, it does not qualify as a burglary.

We do not think that § 924(e)(2)(B)(ii)'s catchall clause—covering crime that "otherwise involves conduct that presents a serious risk of physical injury to another"—changes the analysis. In specifying burglary as a violent felony, Congress made its own categorical judgment as to what subset of breaking and entering offenses "presents a serious potential risk of physical injury to another." Had Congress wished to cast a wider net, it could have easily used the more general term "breaking and entering" instead. But it chose to single out burglary, and it defined that term to include a criminal intent requirement. We are not at liberty to dilute or eliminate that criminal intent requirement; yet that is precisely the effect that would result were we to determine that § 11–8–2 falls under the "otherwise" clause. If breaking and entering is to be considered a violent felony regardless of any criminal intent requirement, then that limitation placed on the definition of burglary is rendered meaningless.[5] We do not think the "otherwise" clause should be construed to include a class of breaking and entering crimes within the scope of § 924(e)(2)(B)(ii) that the definition of burglary explicitly excludes.

Our reading of § 924(e)(2)(B)(ii) is corroborated by its legislative history. As explained in *Taylor*, the original version of § 924(e) included as predicate offenses only "robbery or burglary." Burglary was defined in the statute to include a criminal intent requirement. *See Taylor*, 495 U.S. at 581, 110 S.Ct. 2143 (citing Armed Career Criminal Act of 1984, Pub.L. 98–473, ch. 18, 98 Stat. 2185, 18 U.S.C.App. § 1202(c)(9) (1982 ed., Supp. III) (repealed in 1986 by Pub.L. 99–308, § 104(b), 100 Stat. 459)). When the statute was recodified and amended into its present form, Congress gave no indication that it was dissatisfied with the scope of the term "burglary" or that it wished to sweep all breaking and entering offenses within the reach of § 924(e). Indeed, Congress kept the term "burglary" in the amended section and intended to preserve the term's original statutory definition. *See Taylor*, 495 U.S. at 589–90, 598, 110 S.Ct. 2143.

What the legislative history instead suggests is that, in expanding § 924(e) to cover arson, extortion, explosives crimes, and crimes otherwise presenting serious risk of physical injury, Congress sought to add to § 924(e)'s coverage not new species of breaking and entering crimes beyond burglary, but crimes of entirely different genera. *See, e.g.*, Armed Career Criminal Legislation: Hearing on H.R. 4639 and H.R. 4768 before the Subcommittee on Crime of the House Committee on the Judiciary, 99th Cong., 2d Sess. 33 (1986) (describing as "fundamental premise" of proposed amendments "that it makes no sense to single out robbery and burglary as qualifying prior offenses while omitting more serious felonies such as murder or major drug dealing") (statement of Bruce Lyons, President-elect of National Association of Criminal Defense Lawyers); Armed Career Criminal Act Amendments: Hearing on S.2312 before the Subcommittee on Criminal Law of the Senate Committee on the Judiciary, 99th Cong., 2d Sess. 12 (1986) ("We support this expand-

---

5. Our analysis rests on the definition Congress chose to give the term "burglary" for the purposes of the ACCA. We do not mean to suggest that this analysis governs with respect to the terms "arson," "extortion," or "[a crime that] involves use of explosives."

ed coverage of the Act. Persons who have been convicted of, for example, two rapes and an assault with a dangerous weapon are every bit as dangerous ... as a person who has been convicted of two burglaries and a robbery.") (prepared statement of Deputy Assistant Attorney General James Knapp).

Our prior cases do not argue for a different conclusion. It is true that this court has twice before found statutory breaking and entering crimes to fall under § 924(e)'s "otherwise" clause. *See United States v. Payne,* 966 F.2d 4, 8–9 (1st Cir. 1992) (Mass. Ann. Laws ch. 266, §§ 17–18); *United States v. Patterson,* 882 F.2d 595, 601–02 (1st Cir.1989) (Mass. Gen. Laws ch. 266 §§ 16, 18). But the state offenses at issue in those cases included a criminal intent requirement; indeed, each of the offenses fit the *Taylor* definition of burglary. The only reason the offenses were analyzed under the "otherwise" clause was that, at the time *Patterson* was decided, the definition of "burglary" under § 924(e) had yet to be settled by *Taylor. See Patterson,* 882 F.2d at 604 (turning to the "otherwise" clause after failing to divine how Congress intended to define burglary). *Payne* simply followed in *Patterson's* footsteps, even though *Taylor* had been decided in the interim and could have allowed for an alternative analysis. *See Payne,* 966 F.2d at 8 n. 6.[6]

**6.** We have also held breaking and entering offenses to fall under the "otherwise" clause of U.S.S.G. § 4B1.2(a), which tightly parallels § 924(e)(2)(B). Again, each of these offenses required criminal intent and met the *Taylor* definition of burglary. *See United States v. Sawyer,* 144 F.3d 191, 194–96 (1st Cir.1998) (Me.Rev.Stat.Ann.tit.17–A, § 401); *United States v. Fiore,* 983 F.2d 1, 4–5 (1st Cir.1992) (R.I. Gen. Laws § 11–8–4). The reason these offenses were analyzed under the "otherwise" clause rather than as burglaries traces back to a slight discrepancy between U.S.S.G. § 4B1.2(a) and § 924(e)(2)(B)(ii). The two provisions are identical except that the former lists "burglary of a dwelling" rather than simply "burglary" as a violent felony. In order to harmonize U.S.S.G. § 4B1.2(a) with

■■■■ ] We do not suggest that no breaking and entering offense except one precisely meeting the *Taylor* definition of burglary could ever fall under § 924(e)(2)(B)(ii) through its "otherwise" clause. *See Taylor,* 495 U.S. at 600 n. 9, 110 S.Ct. 2143 ("The Government remains free to argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another' under § 924(e)(2)(B)(ii)."). But in order to fall under the "otherwise" clause, a breaking and entering offense must contain elements truly comparable to those of a burglary—comparable enough that the offense poses an equivalent risk of physical injury. For example, breaking and entering into a houseboat with intent to commit a crime might not constitute burglary because a houseboat is, arguably, not a "building" or "structure"; but it might nonetheless be appropriate to regard such a crime as falling under the "otherwise" clause given that its venue is similar enough to a building that the crime poses the same risk of violence. Here, by contrast, § 11–8–2 does not contain an element similar to the criminal intent requirement of burglary; rather, it is missing that element altogether. Consequently, the crime poses substantially less risk of violence than burglary and thus falls short of the mark set by Congress in its explicit selection of burglary as a violent felony.[7]

§ 924(e)(2)(B)(ii) as construed in *Taylor,* we have read the former's "otherwise" clause to include breaking and entering (i.e., burglary) of buildings other than dwellings. *See Sawyer,* 144 F.3d at 196; *Fiore,* 983 F.2d at 4–5.

**7.** The government argues in its brief that the risk of violence posed by a breaking and entering "has little or nothing to do with the criminal's subjective intentions in breaking and entering." On the contrary, it seems obvious that a person who breaks into a building intending to steal, rape, or murder poses a greater risk of violence than one who breaks and enters without such intentions. Indeed, in contrast to generic burglary, § 11–8–2 easily encompasses vagrants and pranksters among its ranks; thus, the average

Congress's intent in enacting § 924(e) was to separate out for heightened punishment offenders repeatedly convicted of truly violent crimes. Lest we trivialize that intent, courts construing the reach of the provision must take care to stay within the guideposts set by Congress.

For the foregoing reasons, we remand for resentencing.

## IV. Weaves Enhancement

█ The district court enhanced Peterson's sentence for the use of a firearm "in connection with" his narcotics offenses pursuant to U.S.S.G §§ 2K2.1(b)(5) and 4B1.4(b)(3)(A). We review the district court's application of a particular sentencing guideline *de novo*, but the factual findings underlying that application are reviewed for clear error. *See United States v. Thompson*, 32 F.3d 1, 4 (1st Cir.1994).

█ Because we have found that Peterson's conviction for breaking and entering is not a predicate violent felony, *see supra*, we do not apply the Sentencing Guideline relevant to armed career criminals, U.S.S.G. § 4B1.4(a), but rather apply only U.S.S.G. § 2K2.1(b)(5), a largely similar provision that applies generally to firearms offenders. Section 2K2.1(b)(5) provides for an offense level enhancement of 4 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."

█ We construe the phrase "in connection with" broadly. *See United States v. Thompson*, 32 F.3d 1, 7 (1st Cir.1994); *see also United States v. Ellis*, 168 F.3d 558, 563 (1st Cir.1999) (reading same phrase broadly in § 4B1.4(b)(3)(A)). Although there must be a "causal or logical relation or sequence between the possession and the related offense," and "[m]ere coincidental possession" is insufficient, *see Ellis*, 168 F.3d at 563, we will find that a firearm has been used "in connection with"

§ 11–8–2 offender is substantially less likely to harbor a predisposition toward violence

an offense "if the possession has 'the potential to aid or facilitate' the other crime," *id.* (quoting *Thompson*, 32 F.3d at 6). We have not even required physical proximity between the firearms and the narcotics. *See Thompson*, 32 F.3d at 6 (citing *United States v. Brewster*, 1 F.3d 51, 54 (1st Cir. 1993)).

In this case, the government established at trial that Peterson kept two guns in the same apartment where he stored marijuana. It was also established that a third gun was stored near additional marijuana at Peterson's girlfriend's house. All of the guns were readily accessible. The district court concluded that it was Peterson's "modus operandi to have guns near his stash of marijuana." Given that Peterson had firearms in close proximity to his drugs in two different locations, this factual finding was not clear error. And the finding sufficiently supports the legal conclusion that the firearm possession was "in connection with" the underlying narcotics offense. In *Thompson*, we noted that "the usual case" in which the Guideline applies is one in which the defendant "had the firearm available to protect his supply of drugs." 32 F.3d at 8. Peterson's "modus operandi" is well within the ambit of the Guideline. *See United States v. McFadden*, 13 F.3d 463, 465–66 (1st Cir.1994) (the presence of a readily available weapon in a location containing drugs is enough to meet the "in connection with" standard of U.S.S.G. § 2K2.1(b)(5)).

## CONCLUSION

We find none of Peterson's trial-related claims persuasive. We are also unconvinced by his attempt to avoid a weapons-related sentencing enhancement. We do conclude, however, that his conviction under R.I. Gen. Laws § 11–8–2 was not a conviction for a violent felony for purposes of 18 U.S.C. § 924(e). Accordingly, we

than the average burglar.

affirm in part and reverse in part, and remand for resentencing.

TORRUELLA, Chief Judge, dissenting in part.

Although I agree with the majority on the bulk of this opinion, I would find that the breaking and entering statute here, R.I. Gen. Laws § 11–8–2, qualifies as a "violent felony" with respect to 18 U.S.C. § 924(e) under both *Taylor v. United States,* 495 U.S. 575, 591, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and this Court's prior decisions. I accordingly dissent from Part III.

The majority focuses on the fact that the Supreme Court's definition of "burglary" in *Taylor* required that a criminal statute include two elements to qualify: that the defendant break and enter into a "building or structure" and that the defendant break and enter "with intent to commit a crime." *Id.* at 599, 110 S.Ct. 2143. From this definition of burglary in § 924(e)(2)(B)(i), the majority concludes that Congress did not intend that the "otherwise" clause of § 924(e)(2)(B)(ii) include any breaking and entering offense lacking these two features. Admittedly, the Rhode Island statute does not include a felonious intent element.

However, I can not conclude that the *Taylor* decision, which only interpreted § 924(e)(2)(B)(i), necessarily excluded breaking and entering crimes such as this one from the "otherwise" clause of § 924(e)(2)(B)(ii). Although the majority is correct that the legislative history concentrates on "entirely different genera" of property crimes (such as arson and extortion), the history also discusses at length the reasons *why* Congress considered burglary to be a prototypical violent felony. The legislative sponsor, cited in the House Report, found burglary to be "one of the 'most damaging crimes to society,' because it involves 'invasion of [victims'] homes or workplaces' and 'violation of their privacy.'" *Taylor,* 495 U.S. at 581, 110 S.Ct. 2143 (citing H.R.Rep. No. 98–1073, at 1, 3

(1984)). The Senate Report noted that while burglary is often considered non-violent, "its character can change rapidly, depending on the fortuitous presence of the occupants of the home when the burglar enters, or their arrival while he is still on the premises." *Id.* (citing S.Rep. No. 98–190, at 5 (1983)). These animating purposes suggest the appropriateness of finding § 11–8–2 to be a violent felony: whether criminal intent is an element of the statute or not, a violation of § 11–8–2 potentially involves the "invasion of the home or workplace," the "violation of privacy," and the potential for violence toward unanticipated occupiers or discoverers feared by Congress in enacting and amending this legislation.

This Court's prior decisions have realized that the motivation for including a breaking and entering felony as "violent" under the "otherwise" clause rests primarily on the negative effects of the intrusion and minimally on the reason why the criminal enters the structure. In *United States v. Payne,* 966 F.2d 4 (1st Cir.1992), we found that *attempted* breaking and entering was a violent felony. We held that the risk of injury stemmed not from the completion of the break-in, "but rather from the possibility that some innocent party may appear on the scene while the break-in is occurring." *Id.* at 8. Notably, we did *not* premise this serious risk on the fact that the perpetrator was entering the building to commit a felony, or indeed any crime, inside. *See also United States v. Sawyer,* 144 F.3d 191, 195–96 (1st Cir. 1998) (distinction between crime and one of four serious felonies irrelevant to violent felony determination); *United States v. Patterson,* 882 F.2d 595, 603 (1st Cir.1989) ("[W]hile a burglary might start out as a non-violent crime, the burglar may resort to violence if someone is on the premises or appears there while the burglary is in process.... Congress could quite reasonably conclude that no matter what the felon's intent upon breaking in, the property owner may return, a neighbor may in-

vestigate, or a law enforcement official may respond. All of these scenarios present a grave threat of harm to persons." (citing *United States v. Portwood,* 857 F.2d 1221, 1224 (8th Cir.1988))). We concluded in *Patterson,* as I would conclude here, that "[u]nder the catch-all provision of the statute, it matters not how burglary is defined[; t]he crucial factor is an unauthorized entry of the premises of another." *Id.*

Although the majority does not need to reach the issue, Peterson also argues that the "unoccupied" status of the building should pull it out of the ambit of the "otherwise" clause. Again, neither the Supreme Court nor this Court has premised the risk of harm on the occupied or unoccupied status of the dwelling. *See Taylor,* 495 U.S. at 597, 110 S.Ct. 2143 (The definition of a violent felony includes any "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."); *United States v. Schofield,* 114 F.3d 350, 352 (1st Cir. 1997) ("Under *Taylor,* it is irrelevant whether the school was occupied."); *Payne,* 966 F.2d at 8 (Although "any confrontation is more likely to result in violence if it occurs while the perpetrator is in the building, as he is then likely to have no easy way out and to cause greater alarm to whomever he confronts," there remains "a serious risk of confrontation while a perpetrator is attempting to enter the building."). This risk of serious injury stemming from the arrival of a passerby, or even more seriously, from the discovery of a trespasser inside a building with limited exit possibilities, is enough to meet the threshold of violence under the ACCA.

Our analysis requires us to examine whether "the probability of physical harm presented by the mine-run of conduct that falls within the heartland of the statute" is sufficient to meet the "violent felony" standard of § 924(e)(2)(B)(ii). *United States v. De–Jesús,* 984 F.2d 21, 24 (1st Cir.1993). After a careful reading of *Taylor* and this Court's precedent, I find that the same

risks inherent in other "violent felony" statutes are at play in this one. Accordingly, I would affirm the district court's decision on this issue.