COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Petty and Beales
Argued at Chesapeake, Virginia


NILES SEBASTIAN HARRISON

                                                  MEMORANDUM OPINION[*] BY
v.         Record No. 0127-10-1                   JUDGE RANDOLPH A. BEALES
                                                  JANUARY 11, 2011

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                                 Louis R. Lerner, Judge

              Charles E. Haden for appellant.

              Robert H. Anderson, III, Senior Assistant Attorney General
              (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


       A jury convicted Niles Sebastian Harrison (appellant) of threatening to bomb a structure,

pursuant to Code § 18.2-83.  On appeal, appellant claims that the trial court erred "in refusing to

allow" him to testify.[1]  After reviewing the particular circumstances in this case, we find that the

trial court did not abuse its discretion here, and we affirm appellant's conviction.

                                       BACKGROUND[2]

       On the day of appellant's trial, before the jury selection began, the trial court asked appellant

if he was ready to proceed.  Appellant responded, "No," and added that he intended to "disrespect

this courtroom."  The trial court attempted to persuade appellant that any disruption would only get

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Appellant raised several additional questions presented in his petition for appeal.
However, this Court granted his petition only on this one issue.

       [2] As appellant does not challenge the sufficiency of the evidence to support his
conviction, most of the evidence relevant to his conviction is not discussed in this opinion.

him thrown out of the courtroom, but appellant continued to insist that he would disrupt the proceedings and that he would have to be removed from the courtroom.

Despite appellant's representations, the trial court continued with the colloquy. When asked for his plea to the charge, appellant refused to answer, saying, "So you going to have to remove me from this courtroom." Appellant ranted about competency evaluations and his views on the judicial system. He claimed that he had been taking various drugs while he was in jail. He claimed to be Satan, as opposed to the Niles Harrison charged in the indictment. He then began cursing about his attorney and claiming that the court should "pick your jury without me then."

The trial court explained that, if appellant "violate[d] the warning of this Court," then his presence at the proceedings of the trial would be waived. Harrison responded by using inappropriate language, cursing, and by saying, "I'm going to start being very disrespectful." He then talked about the threatening letter that he had allegedly sent to the clerk's office.

The trial court had the veniremen brought into the courtroom. As the court began to explain the process and ask questions, Harrison said, "No. It ain't going to be no jury," and he began cursing. The court had the veniremen taken out of the room and then noted that appellant had been warned against "further outbursts." Appellant responded, "Then remove me," and refused to assure the court that he would behave. At this point the trial court excluded appellant from the courtroom, over his attorney's objection.

The trial was divided into two parts – the first part for the presentation of evidence on guilt (where the Commonwealth had the burden of proof) and the second part for the presentation of evidence on appellant's affirmative defense claiming insanity (where appellant had the burden of producing evidence of his insanity). At the conclusion of the evidence on appellant's guilt, defense counsel stated, "[W]e have no evidence to present at this time" and argued that the evidence was insufficient to prove appellant's guilt. After denying this motion to

strike, the trial court allowed the affirmative defense portion of the trial to go forward. Defense counsel presented evidence from Dr. William Pappadake, who opined that appellant was "mentally ill" and suffering from "paranoid delusions," but was "capable of reasoned thought." The Commonwealth then presented evidence from Dr. Margaret Fahey, who testified that appellant, even though he had some mental problems, knew that threatening to bomb the courthouse was wrong. Both witnesses were excused at the conclusion of their testimony.

At the conclusion of Dr. Fahey's testimony, the Commonwealth rested "on that issue." When the trial court asked if the defense had any further evidence, defense counsel responded, "No, your Honor, not at this point." The court then gave the jury a lunch break, informing them that they would be given their instructions and hear closing arguments when they returned, after which they would deliberate.

After the jury left for lunch, the trial court, *sua sponte*, had the bailiff bring appellant into the courtroom in order for the court to determine if he could behave if allowed to stay during the final portion of the trial. When the court asked appellant if he could behave, appellant responded: "Am I not allowed to testify in my defense?" This question was the first indication that appellant wanted to testify.

The trial court responded, "[Y[our behavior was disruptive."[3] After defense counsel's argument that appellant had a right to testify, the court began to inquire about the possible subject of appellant's testimony. The prosecutor said, "Mental Health, judge, that's the only

---

[3] Although the trial court commented at one point that "the defense has not rested," appellant conceded at oral argument that, given the trial court had informed the jury only that they would be instructed and hear closing argument after the lunch break, the defense had essentially rested at this point.

defense." The court stated that appellant was not qualified to testify regarding his mental health. The trial court then denied appellant's motion to testify.[4]

The jury found appellant guilty of threatening to bomb a structure. He was sentenced to eight years in the penitentiary.

## ANALYSIS

Appellant argues that the trial court erred when it refused to reopen the evidence and allow him to testify on his own behalf. When reviewing such a claim, we are mindful that:

> We have long followed the rule that the order of proof is a matter within the sound discretion of the trial court and this court will not reverse the judgment except in very exceptional cases, and, unless it affirmatively appears that this discretion has been abused, this court will not disturb the trial court's ruling.

Hargraves v. Commonwealth, 219 Va. 604, 608, 248 S.E.2d 814, 817 (1978) (citation omitted). Although appellant's claim here involves his right to testify on his own behalf, he does not cite any case law or statute that requires a trial court to reopen a case and allow a defendant to testify after the jury has been informed that no more evidence will be presented and after the other witnesses in the case have been excused. To the contrary, several federal appellate courts have found that refusing to reopen a case to allow a defendant to testify does not necessarily violate the constitutional right to testify in one's own defense. See United States v. Byrd, 403 F.3d 1278, 1283 (11th Cir. 2005) ("We now join the First and Eighth Circuits in holding that an accused's right to testify generally must be exercised at the appropriate time, which is before the evidence-taking portion of the trial has closed. Though the district court may reopen the evidence in order to allow a defendant to testify, its failure to do so usually will not constitute an abuse of discretion." (citations omitted)); United States v. Peterson, 233 F.3d 101, 105-07 (1st Cir. 2000) (holding that the trial court did not abuse its discretion by refusing to reopen the case

---

[4] The content of appellant's testimony was not proffered to the trial court.

for Peterson to testify because, *inter alia*, the jury had been informed that they would hear closing arguments rather than additional evidence upon returning from a recess in the case and "Peterson gave the court hardly any indication as to what he wished to testify about"); United States v. Jones, 880 F.2d 55, 59-60 (8th Cir. 1989) (holding that the trial court did not abuse its discretion by refusing to reopen the case for Jones to testify when the other witnesses had already been allowed to leave).

This case presents a procedural posture very similar to Minor v. Commonwealth, 16 Va. App. 803, 433 S.E.2d 39 (1993). In that case, the parties had rested, and the witnesses had been excused. Id. at 804-05, 433 S.E.2d at 40. The court had ordered a thirty-minute recess, after which the jury would be instructed and closing arguments presented. Id. at 805, 433 S.E.2d at 40. At that point, defense counsel asked to have a witness retake the stand in order to present testimony that he, rather than Minor, had committed the crime. Id. The trial court denied the motion to reopen the case, and this Court found that the court's ruling was not an abuse of its discretion. Id.

Here, the trial court had previously made it very clear to appellant that he would not be allowed in the courtroom during the trial if he continued to misbehave by ranting, cursing, and showing disrespect for the court. Appellant encouraged the trial court to exclude him, and, after showing a great deal of patience, the court eventually did exclude him. No request was made at that point to allow him to return in order to testify on his own behalf to the jury. The jury then was chosen. Both parties presented their evidence to the jury, after which they informed the trial court that they had no additional evidence to present. Defense counsel argued for a motion to strike the evidence. The jury was informed that they had heard all the evidence and that they would next hear instructions and closing arguments when they returned from their lunch break.

While the jury was at lunch, the trial court, *sua sponte*, asked the bailiff to bring appellant to the courtroom – not with the understanding that appellant was going to testify, but instead because the court wanted to determine whether appellant would behave himself if he was allowed to sit at the table with defense counsel during the instruction of the jury and the closing arguments. At this point, for the first time, appellant asked to testify on his own behalf. The trial court decided not to reopen the evidence and permit this additional testimony. Because appellant's counsel had already rested his case, the witnesses had already been excused, and the jury had already been informed that they would not hear any more evidence, we cannot find that the trial court abused its discretion in denying appellant's motion to reopen the evidence under these circumstances and to allow him to take the stand.[5] Hargraves, 219 Va. at 608, 248 S.E.2d at 817; Minor, 16 Va. App. at 805, 433 S.E.2d at 40.

### CONCLUSION

We hold that the trial court did not abuse its discretion here. Therefore, we affirm appellant's conviction.

Affirmed.

---

[5] The trial court also made a statement suggesting that appellant was not qualified to testify on the issue of his insanity at the time of the offense, and, therefore, his testimony was inadmissible. Appellant "objected" to the court's denial of his request to reopen the evidence and allow him to testify, but he never specifically objected to this particular statement by the trial court. Under the Rules of this Court, we cannot consider on appeal such a general objection to a specific ruling of a trial court. See Rule 5A:18 (an objection must be "stated with reasonable certainty" in order to be considered on appeal as "a basis for reversal" of a trial court's ruling).